Robert A. JENKINS, By and Through his parents, Mr. and Mrs. Orville Jenkins, and Ralph Eugene Springer, By and Through his parents, Mr. and Mrs. R. L. Springer, jointly and severally and on behalf of all others similarly situated

v.

Luis M. COWLEY, M. D., Individually and as Superintendent of Terrell State Hospital and his successors in office, et al.

No. CA 3–74–394–C.

United States District Court,
N. D. Texas,
Dallas Division.

Sept. 17, 1974.

Aglaia Mauzy F. Burns Vick, Jr., Frank Stenger, Dallas Legal Services Foundation, Inc., Dallas, Tex., for plaintiffs.

John L. Hill, Atty. Gen., of Tex., Larry F. York, David W. Pace, Roland H. Allen, M. Lynn Taylor, Asst. Attys., Gen., Austin, Tex., for defendants.

OPINION

WILLIAM M. TAYLOR, Jr., Chief Judge.

The plight of the mentally disabled is among the saddest and most alarming problems facing our society, and too little is done to alleviate the effects of the problem. Traditionally we have relegated persons suffering from mental disabilities to deplorable institutions that have been inadequately staffed, improperly managed, and have little regard for the consti-

tutional rights of those in the institution. The mentally disabled have been the victims of widespread governmental complacency and outright neglect. This is outrageous. But, worst of all, most of us have accepted it without protest.[1]

The Court is well aware of the popular belief of the deficiencies in the mental health systems of the various states. The Court firmly believes that each and every patient of a mental institution, whether voluntarily or involuntarily committed, has constitutional rights which will be jealously guarded by the State and Federal Courts of this land.

But constitutional rights are minimal rights. They are the floor upon which we have built our system of freedom and liberty under the rule of law. When an individual has a grievance against his government, State or Federal, the initial inquiry must be to whom must the grievance be addressed? If the grievance concerns a fundamental attack on a liberty protected by the United States Constitution or a State constitution the proper forum usually is a court of law. If it is not, the proper forum may be the executive or legislative branch.

The controversy now before the Court, an application for preliminary injunction, is of a new, unexplored type. There are few cases defining the rights of patients in mental institutions. The question that the Court has in mind is what grievances of these Plaintiffs should be addressed to a court and which should be addressed to the Legislature of the State of Texas? The Court is cognizant of the generally held belief that too little is being done for mental health patients. And the consensus of both Plaintiffs and Defendants is that the Terrell State Hospital is understaffed and there is not sufficient money available for care and treatment of patients. But at what point do deficiencies in treatment or care become of constitutional significance.

The Fifth Circuit has held that involuntarily committed patients have a right to treatment.[2] Again the Court is faced with questions as to what is treatment and what constitutes constitutionally required minimum treatment of involuntarily committed patients?

Plaintiffs/patients herein, though, were voluntarily committed. Under Vernon's Ann.Civ.Stat. art. 5547–25, they may be released within 96 hours of written request unless a petition or application for involuntary commitment is filed and they are held pursuant to it. This raises on the face of the matter a question as to whether there is a case or controversy before the Court.[3]

The Court also has problems with what sort of relief it could or should give in this case if it concluded relief was appropriate. Normally in cases such as voting rights cases and desegregation cases, it is incumbent upon the state officials involved to come up with a course of action that will rectify any constitutional infirmities. The Court is also cognizant of the prisoner relief cases in which the ultimate remedy is release of the prisoner if the public officials do not rectify the constitutional wrong. In any event, the public officials are usually allowed to shape a remedy as they undoubtedly best know the operations of their systems.

██ This raises another problem. Plaintiffs have not met their burden of

1. "New Hope for the Mentally Disabled," Chesterfield Smith, 60 American Bar Association Journal, p. 909 (August, 1974).

2. Donaldson v. O'Connor et al., 493 F.2d 507 (5 Cir. 1974).

3. Plaintiffs have moved for the addition of a Mr. Zapata as a Plaintiff. Mr. Zapata was apparently committed involuntarily which would cure any case or controversy problems. But there is no motion to intervene before the Court by Mr. Zapata or someone in his behalf. The Court is positive that Plaintiffs do not want to implead Mr. Zapata as a third party plaintiff and will take their motion as an acquiescence should such intervention be sought.

proof. The Fifth Circuit has recently set down the prerequisites to the granting of a preliminary injunction. They are:

(1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.[4]

■ The Court cannot in any way say that Plaintiffs will or will not succeed on the merits. There is a dearth of law on the subject. Plaintiffs' main attack in this case has been upon the use of seclusion rooms. Seclusion rooms are actually enclosures for solitary confinement. They are ordinarily brought into use for the protection of the patient or for the protection of the other inmates of the institution. In the case of Mr. Jenkins, it appears that he was put into seclusion because of his frequent violent behavior. Many times he started fights with other patients. His safety and the safety of his fellow patients is, of course, of great concern to the Court. All of the experts who testified agreed that the use of seclusion rooms should not be absolutely prohibited but these experts disagree as to the time of confinement in a seclusion room without attention and treatment of the patient as well as an opportunity for his exercise. Neither side has presented a full factual explanation as to the workings of the Terrell State Hospital although copies of procedures promulgated by the Hospital for the use of seclusion rooms were admitted in evidence. These procedures do not facially show a constitutional abuse. There was some evidence of abuse of seclusion rooms presented at the hearing but it related to incidents that occurred in the past. Other evidence was presented that the named Plaintiffs had been put into seclusion many times. This does show a potential for the abuse of seclusion rooms but the Court is not convinced that there is at the present time an actual abuse. It could well be a deprivation of the constitutional rights of a patient for him to be incarcerated in one of these solitary confinement rooms and then caused to remain there over an extended period of time without attention or treatment.

The Court would be loathe to interfere with the operation of Terrell State Hospital in the absence of a full and complete showing that would provide answers to the questions raised in this Opinion.[5] It is anticipated that upon trial on the merits such showing will be made but until such time no injunctive order will issue.

Due to the views expressed herein and the nature of the case, it will be expedited upon the docket of the Court. A hearing on the class action aspect is set for October 10, 1974, at 2:00 P.M., and the trial on the merits is set for November 18, 1974, at 9:30 A.M.

---

4. Canal Authority of State of Florida v. Callaway, 489 F.2d 567, at p. 572 (5 Cir. 1974).

5. See Sosa v. Board of Managers of Val Verde Memorial Hospital, 437 F.2d 173 (5 Cir. 1971) and Duffield v. Memorial Hospital Association of Charleston, 361 F.Supp. 398 (1973). These cases show the reluctance of courts to interfere with decisions made by medical authorities on medical grounds.